UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID WAYNE THOMAS, II,<br><br>    Plaintiff,<br><br>v.<br><br>C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC.,<br><br>    Defendants. | Case No. C19-1464RSM<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Motion for Summary Judgment. In this product liability action, David W. Thomas, II seeks to recover for injuries he suffered after implantation of a Bard Meridian Inferior Vena Cava ("IVC") Filter. Plaintiff Thomas has previously withdrawn his claims for negligence per se, breach of warranty, negligent and fraudulent misrepresentation, fraudulent concealment, consumer protection violations, and punitive damages. *See* Dkt. #36 at 1 n.1. Defendants move to dismiss the remaining two causes of action: Count II (Strict Products Liability… Failure to Warn) and Count III (Strict Products Liability - Design Defect). Dkt. #26. Plaintiff opposes. Dkt. #36. For the reasons stated below, the Court finds that Plaintiff has established a genuine dispute as to material facts precluding summary judgment dismissal of either claim.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 1

## II.  BACKGROUND

On April 19, 2014, Mr. Thomas went to urgent care after experiencing abdominal pain and diminished food intake and appetite. Dkt. #27-3 at GROMC_MDR00136. Doctors identified a "significant abdominal mass – highly suspicious for lymphoma/cancer" near his liver as well as bilateral pulmonary emboli. *Id*. at GROMC_MDR00139.  Mr. Thomas was transferred to Providence St. Peter Hospital for additional medical attention. Dkt. #27-4.  He was given an anticoagulant and his treating physicians observed that the abdominal mass had compressed his inferior vena cava ("IVC"), causing a significant clot to form.  Dkt. #27-5. They consulted with an interventional radiologist regarding the possible placement of an IVC filter so that Mr. Thomas's anticoagulation could be discontinued in order to pursue a biopsy. *Id*. at STPETEFM_MDR00024.

After explaining the procedure, benefits, and risks of implantation of Defendants' Meridian Filter and after obtaining informed written consent, Dr. Alireza Bozorgmanesh implanted the filter through Mr. Thomas's right jugular vein on April 22, 2014. Dkt. #27-6 at STPETEFM_MDR00114-16; Dkt. #27-7 at STPETEFM_MDR00362-63. The procedure was completed without incident.  Dr. Bozorgmanesh recommended that the filter be removed "as soon as patient's retroperitoneal adenopathy improves with improved mass effect on the IVC." *Id*. at THOMASHD_STPETEFM_ MDR00116.  Mr. Thomas was hospitalized until April 27 and received care for the cancer that was causing the abdominal swelling and related clotting. Dkt. #27-8, STPETEFM_MDR000011-15. After discharge he was instructed on certain follow up medications and treatments.

While Mr. Thomas continued his cancer treatment, his doctor noted on May 28, 2014, that it was not yet clear that the risks of a venous thromboembolism ("VTE")—or clotting in the

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 2

veins—had "resolved rapidly enough to permit removal." Dkt. #27-9, STPETEFM_MDR00716-19.  In October 2015 Mr. Thomas contacted the radiology vascular department at Providence St. Peter Hospital regarding the feasibility of removing his filter. Dkt. #27-10 at STPETEFM_MDR00756-57.

After a CT scan showed "the IVC filter to be in place… with evidence for two of the filter struts to have perforated the IVC and have upturned barbs," on December 10, 2015, doctors attempted to remove Mr. Thomas's filter via ultrasound guided access to his right internal jugular vein, but were unable to do so after utilizing several different techniques and after Mr. Thomas began to experience discomfort.  Dkt. #27-12.

In early 2016, Mr. Thomas's doctors again discussed retrieving the filter and decided that he should remain on anticoagulation and not have further attempts at removal unless his lung function improved to a condition that would allow him to undergo a retroperitoneal lymph node dissection, a procedure that removes lymph nodes from the abdomen. Dkt. #27-13 at VMMC_MDR00665.  Mr. Thomas has had follow up exams and calls with several hospitals including Providence St. Peter regarding the positioning of the filter. Dkt. #27-14 at STPETEFM_MDR00838-839; Dkt. #27-15 at VMMC_MDR00979-980. Mr. Thomas's cancer is in remission.  Dkt. #27-16 at MCHS_MDR02491.

The parties agree that the Information For Use ("IFU") pamphlet, presumably sent to the hospital where Plaintiff had the filter implanted, included warnings about filter "penetration," "migration," and "fracture."  See Dkt. #37-32 at 8.  Mr. Thomas will present evidence that these warnings were inadequate and did not reflect all the risks known to Defendants, but such is not at issue in this Motion.

Plaintiff filed this action on January 17, 2017.  Dkt. #1.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 3

During discovery, Mr. Thomas served a Plaintiff Fact Sheet ("PFS"), and Bard similarly served a Defendant Fact Sheet ("DFS"). Mr. Thomas alleges in his Fact Sheet that he has "chest pain" and "other pain and suffering, mental anguish, physical disability, emotional distress, loss of use/enjoyment of his life, [and] other non-economic damages." Dkt. #27-18 at 15. Plaintiff also alleged that the filter legs perforated the wall of his IVC, and added that his symptoms related to the filter include IVC thrombosis, chest pains, and currently necessitates anti-coagulant use. *Id*. at 15–16. Mr. Thomas, Dr. Alireza Bozorgmanesh, and Plaintiff's expert Dr. Robert Allen were all deposed in 2020. The parties did not seek to depose any other witnesses before the deadline to do so. Defendants disclosed the report of case-specific expert Dr. Jeffrey Kalish on January 1, 2021. Plaintiff did not pursue a deposition of Dr. Kalish.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable

inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Failure to Warn Claim

The only remaining claims are product liability failure to warn and defective design claims. In Washington, these claims are governed by the Washington Product Liability Act, RCW 7.72 *et seq*. RCW 7.72.030(1) provides that a manufacturer is "subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided." Warnings are inadequate:

> if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

RCW 7.72.030(1)(b).

Under the "learned intermediary" doctrine, a medical device manufacturer satisfies its duty to warn of dangers involved in using its product if the manufacturer "gives adequate warning to the physician who prescribes it." *Terhune v. A.H. Robins Co.*, 577 P.2d 975, 977 (Wash. 1978); *see also Adams v. Synthes Spine Co., LP.*, 298 F.3d 1114, 1117 (9th Cir. 2002) (citing *Terhune* and explaining that, "[u]nder Washington law, the 'consumer' of a prescription-only medical device such as this is the physician, not the patient").

Here, Defendants assert Mr. Thomas cannot demonstrate proximate cause because the implanting physician, Dr. Bozorgmanesh, stated in deposition that he cannot be sure he read the

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 5

IFU for this filter before the procedure. *See* Dkt. #26 at 11. Defendants argue that "to be successful on a claim for failure to warn, a plaintiff must prove that an adequate warning would have caused the product to be treated differently and avoided the harm." *Id.* at 10 (citing *Ayers By and Through Smith v. Johnson & Johnson Baby Products Co.*, 797 P.2d 527, 530 (Wash. Ct. App. 1990), *aff'd*, 818 P.2d 1337 (Wash. 1991)). Defendants "recognize[] that it appears Dr. Bozorgmanesh had read some version of some Bard IFU at some point prior to his deposition, but he was not certain as to when or even if he had read the entire document." *Id*. at 12. Defendants maintain it is therefore "impossible to say what impact, if any, a different, increased warning would have had…" *Id*. Defendants make no further arguments for dismissal of this claim.

        In Response, Mr. Thomas argues:

> Whether or not he could remember reading the IFU immediately prior to performing Mr. Thomas's implant surgery, Dr. Bozorgmanesh was familiar with the IFU for every IVC filter model he used on his patients, including the Meridian filter, and he testified that he was familiar with the "warnings" section of the Meridian IFU prior to placing Mr. Thomas with the Meridian filter. *See* Ex. 3, Bozorgmanesh Dep., at 53:15–24, 55:1–25. Dr. Bozorgmanesh further testified that different IVC filter models presented different levels of risks. *Id*. at 64:21–25…. Dr. Bozorgmanesh testified that he would expect that before the Meridian filter was placed on the market, Bard would have tested it for safety and efficacy, and that he was surprised to learn that no such clinical studies were conducted. [*Id.*] at 62:13–24. He further testified that the lack of clinical testing is something he needed to know before making a decision on whether to utilize the Meridian filter on patients, as it would have caused him to consider safer filter models made by Bard's competitors. *Id*. at 63:1–12. The lack of clinical testing was something Dr. Bozorgmanesh would have considered discussing with patients like Mr. Thomas as part of the risk/benefit analysis of the filter. *Id*. at 63:14–18, 64:14–19.

Dkt. #36 at 15 – 16.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 6

Causation is typically a question of fact for the jury. Viewing the deposition testimony of Dr. Bozorgmanesh in the light most favorable to the non-moving party, the Court cannot say as a matter of law that that an adequate warning would have not caused the product to be treated differently in a way that would have avoided this harm. In the key passage relied on by Defendants, Dr. Bozorgmanesh is asked if he recalled reading the Meridian IFU prior to implanting the filter in Mr. Thomas and responds "I can't say that I did prior to his case, but I can tell you at one point or another I have read the IFUs…. Not every word in the IFUs, but in general I have read them for most everything I use." Dkt. #27-19 at 53:18–24. Defense counsel then asks "so based on that, would it be complete speculation to conclude that you, in fact, read this specific IFU prior to the time of implant?" and the doctor responds "I think so." *Id*. at 53:25–54:3. Defense counsel makes hay of this apparent admission, but the Court reminds the parties that Dr. Bozorgmanesh is not a lawyer and finds his "I think so" statement not particularly conclusive. Based just on the above, a jury could easily find that Dr. Bozorgmanesh read the IFU at issue and agree with Plaintiff's counsel's arguments above. Further questioning by counsel in front of a jury is necessary. There is clearly a genuine dispute of material fact related to causation, precluding summary judgment. Defendants make no other arguments for dismissal of this claim.

**C. Design Defect Claim**

Defendants point to Comment k to the Restatement (Second) of Torts § 402A as a basis to escape liability on this claim:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 7

> consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Defendants argue that, in the absence of a manufacturing defect (improper preparation) or inadequate warnings (improper marketing or warnings), manufacturers of medical devices are not to be held liable for injuries attending the use of such products. Dkt. #26 at 13 (citing *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 764, 389 P.3d 517, 527). However, as the Court has found that inadequate warnings remain an issue for the jury, the Court cannot conclude as a matter of law that comment k precludes a design defect claim.

## IV.   CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Summary Judgment, Dkt. #26, is DENIED.

DATED this 15th day of November, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 8